IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| GERALD THEIS, JR.,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>AFLAC INC.,<br><br>　　　　　　Defendant. | CV 20-11-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Gerald Theis, Jr., ("Theis") originally filed this action against Defendant AFLAC, Incorporated ("Aflac") in Montana Thirteenth Judicial District Court for Yellowstone County on December 31, 2019. (Doc. 1-2.) Aflac removed the matter to this Court on February 20, 2020, based on federal question and supplemental jurisdiction. (Doc. 1.)

Presently before the Court is Aflac's Motion to Compel Arbitration, Dismiss or Stay Proceedings, and for Attorneys' Fees. (Doc. 6.) The matter is fully briefed and ripe for review. Having reviewed the parties' briefing, the Court **RECOMMENDS** the motion be **GRANTED** in part and **DENIED** in part.

/ / /

/ / /

1

**I.     Background**

Theis is a citizen of the state of Montana. (Doc. 1-2 at 4.) For approximately 40 years, Theis has been an independent contractor with Aflac as both a sales associate and regional sales coordinator. (Docs. 1-2 at ¶¶ 6-7; 9 at 2.) He was the regional sales coordinator for eastern Montana, as well as north central Wyoming. (Doc. 9 at 2.) Theis's position as a regional sales coordinator was terminated on April 3, 2019. (Doc. 1-2 at ¶¶ 7, 21.) He subsequently filed an action in Montana state district court, alleging wrongful termination and age discrimination. (*Id.* at ¶¶ 29-43.)

Underlying Theis's business relationship with Aflac is an Associate's Agreement, which sets forth terms and conditions of his association with Aflac, and a Regional Sales Coordinator's Agreement, which is a separate agreement providing terms and conditions specific to that position. (Docs. 7 at 4; 9-1 at 5-22, 23-27.) The Regional Sales Coordinator's Agreement also incorporates all terms and conditions of the Associate's Agreement, including provisions for termination and an arbitration agreement. (Docs. 7 at 4; 9-1 at 23.)

Paragraph nine of the Associate's Agreement governs termination of the agreement and provides for termination for cause, termination without cause, and other related provisions. (Doc. 9-1 at 17.) Paragraph 9.2 provides that either party

may terminate the agreement at will, without cause, "upon giving thirty (30) days prior written notice to the other party." (*Id.*)

Theis alleges that Aflac failed to provide him 30-days-notice prior to his termination as regional sales coordinator, as required for terminations without cause. (Doc. 9 at 3.) Theis also avers that once notice of termination of the regional sales coordinator position was given, the Associate's Agreement required Aflac to continue paying him for 30 days. (Doc. 9-1 at 3, ¶ 15.) Theis states that he is owed $26,550 in unpaid override commissions, stock, and renewals for this 30-day period. (*Id.* at 3, ¶¶ 16-17.) Furthermore, Theis avers that Aflac deducted $2,108.16 for a "Sales Incentive Fund" after he attempted to end his voluntary contributions. (*Id.* at 3, ¶¶ 18-22.)

After removal, Aflac filed the instant motion and argues that the arbitration provision in the Associate's Agreement required Theis to submit to arbitration any issues arising from the Regional Sales Coordinator's Agreement or Associate's Agreement. (Docs. 6; 7 at 2-3.) Paragraph 10 the Associate's Agreement contains the arbitration agreement, which reads in pertinent part:

> 10.1 **Arbitration Agreement.** Except for an action by Aflac to enforce the provisions contained in Paragraphs 1.4, 3, 8, 10.5 or 10.6, the parties agree that any dispute arising under or related in any way to the Agreement ("Dispute"), to the maximum extent allowed under the Federal Arbitration Act ("FAA"), shall be subject to mandatory and binding arbitration, including any Dispute arising under federal, state or local laws, statutes or ordinances (for example, statutes prohibiting anti-competitive conduct, unfair business practices and discrimination

3

> or harassment on the basis of race, sex, religion, color, national origin, age or disability) or arising under federal or state common law (for example, claims of breach of contract, fraud, negligence, emotional distress or breach of fiduciary duty). … THE PARTIES WAIVE ANY RIGHT TO TRIAL BY A JURY IN A COURT OF LAW TO RESOLVE ANY DISPUTE. (Emphasis original.)

(Docs. 7 at 5; 9-1 at 17-18.)

Theis argues that the arbitration agreement is unconscionable and unenforceable under Montana law.

## II. Legal Standard

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts involving interstate commerce. The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA declares a national policy favoring arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 2 (1984); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). It places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The FAA provides that upon petition of a party, a court "shall make an order directing the parties to

4

proceed to arbitration in accordance with the terms of the agreement," if the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4.

Because arbitration is favored, Theis, as the party challenging the enforceability of the arbitration agreement, "bear(s) the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)).

When considering whether to compel arbitration, courts are "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. If these two requirements are met, judicial proceedings must be stayed "until such arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C. § 3.

The proper standard for considering motions to compel arbitration is the summary judgment standard of Federal Rule of Civil Procedure 56(a). *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 804 (N.D. Cal. 2004); *Coup v. Scottsdale*

*Plaza Resort, LLC*, 823 F.Supp.2d 931, 939 (D. Ariz. 2011). Courts may consider evidence outside of the pleadings for purposes of deciding such motions. *Regents of University of California v. Japan Science and Tech. Agency*, 2014 WL 12690187, *3 n. 24 (C.D. Cal. Oct. 16, 2014) (collecting cases).

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

## III.  Discussion

Aflac argues that the instant action is subject to the arbitration provision contained in the Associate's Agreement, and therefore the Complaint must be dismissed or stayed, and arbitration compelled. (Doc. 7 at 8-9.) Theis does not contest the applicability of the FAA, nor does he disagree that the present dispute is within the scope of the arbitration agreement. Instead, he argues that the arbitration provision is unenforceable because it contains a fee-splitting scheme, rendering it unconscionable, and because Aflac materially breached the

Associate's Agreement. (Doc. 9 at 7, 9.) Each party argues for attorney's fees in their favor. (Docs. 7 at 15; 9 at 14.)

### A. Whether a Valid, Enforceable Arbitration Agreement Exists

In assessing the making of an arbitration agreement, courts "should apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). Both parties acknowledge that Montana law applies to determine the validity of the arbitration agreement. (*See*, Docs. 9 at 6; 17 at 4); also, *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (California contract law applied where plaintiff was employed in California) and *Ticknor v. Choice Hotels Intern.,* 265 F.3d 931, 938 (9th Cir. 2001) (applying Montana law to determine the validity of an arbitration clause in a contract governing the operation of a hotel franchise in Montana).

In Montana, the essential elements of a contract are "(1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." *Hurly v. Lake Cabin Dev., LLC*, 364 Mont. 425, 430-431 (2012) (citing Mont. Code Ann. § 28-2-102). Here, the Court finds the elements of a contract are satisfied with respect to the Associate's Agreement. Aflac and Theis are identifiable parties capable of contracting who entered into the agreement with mutual consent as signatories. (Doc. 9-1 at 22, 25.) Further, the agreement has the

lawful object of engaging Theis to solicit applications for Aflac insurance policies, in consideration for sales materials, review of solicited applications, and payment for successful applications.  (See *Id.* at 7, 10, 11-12); Mont. Code Ann. § 28-2-601.  Neither party argues to the contrary.  Thus, the Associate's Agreement is a valid contract.

           **1.**     **Unconscionability**

Nevertheless, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).  As noted above, Theis argues the agreement is not enforceable because it contains an unconscionable fee-splitting scheme within the arbitration agreement.  The Associate's Agreement provides for cost-sharing for a panel of three arbitrators, with each party to choose and pay one non-neutral arbitrator. (Doc. 9-1 at 18, ¶ 10.2.)  Once chosen, a third neutral arbitrator is selected, and the complaining party has "the choice of having Aflac pay the fees of the Neutral Arbitrator or, if the Complaining Party prefers, Aflac and the Complaining Party will equally divide the expenses and fees for the Neutral Arbitrator." (*Id.*)  Theis argues that this arrangement is unconscionable, maintaining "[t]he rule in the Ninth Circuit is when arbitration is mandatory and it requires the complainant to share fees it is unconscionable." (Doc. 9 at 8.)

The Montana Supreme Court recently reviewed and clarified the appropriate analysis for determining whether an arbitration agreement is unconscionable under Montana law in *Lenz v. FSC Securities Corporation*, 414 P.3d 1262, 1274 (Mont. 2018). The court explained that an otherwise validly formed contract or term may be invalidated based on unconscionability if "(1) the contract or term is a contract of adhesion and (2) the contract or term unreasonably favors the stronger party or is unduly oppressive to the weaker party." *Lenz*, 414 P.3d at 1274. As to the first question "a contract of adhesion is a contract wherein a party in superior bargaining position dictates the contract terms to the weaker party on a take it or leave it basis without any reasonable opportunity for negotiation." *Id.* The second consideration is "a mixed question of fact and law under the totality of the circumstances surrounding the execution of the contract." *Id.* at 1276. In considering the totality of the circumstances under this second requirement, the Montana Supreme Court looks to several non-exclusive factors identified in *Kortum-Managhan v. Herbergers NBGL*, 204 P.3d 693, 699 (Mont. 2009), as follows:

> whether there were any actual negotiations over the waiver provision; whether the clause was included on a take-it-or-leave-it basis as part of a standard-form contract; whether the waiver clause was conspicuous and explained the consequences of the provision (e.g. waiver of the right to trial by jury and right of access to the courts); whether there was disparity in the bargaining power of the contracting parties; whether there was a difference in business experience and sophistication of the parties; whether the party charged with the waiver

9

was represented by counsel at the time the agreement was executed; whether economic, social or practical duress compelled a party to execute the contract (e.g. where a consumer needs phone service and the only company or companies providing that service require execution of an adhesion contract with a binding arbitration clause before service will be extended); whether the agreement was actually signed or the waiver provision separately initialed; whether the waiver clause was ambiguous or misleading; and whether the party with the superior bargaining power lulled the inferior party into a belief that the waiver would not be enforced.

*Kortum-Managhan*, 204 P.3d at 699.

The Montana Court has also identified additional factors that may be considered in determining unconscionability, such as "whether the disputed term was common in prior dealings between the parties, whether the weaker party carefully reviewed the agreement, and whether the stronger party personally explained the nature and consequences of the disputed term." *Lenz*, 414 P.3d at 176.

Theis does not address any of these relevant considerations. He has not touched on the issue of whether his contracts with Aflac were contracts of adhesion and has not presented any facts to show how the contracts were negotiated and executed. He has also not addressed any of the *Kortum* factors to determine whether the agreement unreasonably favors Aflac. Instead, he appears to assert that any cost-splitting provision in an arbitration agreement is *per se* unconscionable, citing *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003).

10

In *Ingle*, the Ninth Circuit considered an arbitration agreement in a Circuit City employment contract, which contained a provision that required the employee to pay a filing fee and to split the cost of the arbitration with Circuit City. *Ingle,* 328 F.3d at 1169, 1177-1178. Applying California law, the court pointed out it had already rejected the same Circuit City cost-splitting provision in another case arising in California, *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002), and said Circuit City's "fee allocation scheme alone would render an arbitration agreement unenforceable." *Id.* at 1177. The Ninth Circuit reached the same conclusion in another case applying California law. See *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003) (fee-splitting scheme was "unconscionable because it imposes on some consumers costs greater than those a complainant would bear if he or she would file the same complaint in the court," citing *Armendrariz v. Found. Health Psychcare Servs., Inc.* 6 P.3d 669, 687 (Cal. 2000).[1]

---

[1] The Ninth Circuit's decisions in *Adams, Ingle, and Ting* were all largely based on the California Supreme Court's decision in *Armendrariz* and a D.C. Circuit Court decision in *Cole v. Burns Intern. Security Svcs.*, 105 F.3d 1465 (D.C.Cir. 1997). The viability of those decisions has since come into question following the Supreme Court's decision in *AT&T v. Concepcion*, 563 U.S. 333 (2011) and *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000). See e.g., *James v. Conceptus, Inc.*, 851 F.Supp.2d 1020, 1032-33 (S.D. Tex. 2012) (discussing *Armendariz's* viability after *Concepcion*) and *Andersen v. IntePros Federal, Inc.,* 240 F.Supp.3d 143, 151-154 (D.D.C. 2017) (discussing *Cole's* per se rule following *Green Tree*). Since Montana law applies here, resolution of the issue is not necessary.

11

But just as the Ninth Circuit applied California law to the foregoing cases arising in that state, this Court is bound to apply Montana law here. The Montana Supreme Court has not considered whether fee-splitting provisions in arbitration agreements are *per se* invalid as a categorical rule. Therefore, it is this Court's obligation to predict how the Montana Supreme Court would resolve the issue. *Ticknor v. Choice of Hotels Intern. Inc.,* 265 F.3d 931, 939 (9th Cir. 2001). In doing so, the Court must "look to existing state law without predicting potential changes in that law." *Id.*

In resolving this issue, there is no reason to expect that the Montana Supreme Court would deviate from the framework it carefully laid out in *Lenz* for evaluating the conscionability of arbitration agreements in general. Application of the relevant factors established by the Montana Court on a case-by-case basis may lead to the conclusion that fee-splitting agreements are unconscionable in certain circumstances and not in others. In some situations, for example, the disparity in the bargaining power of the parties may be so great, and the burden imposed by the fee-splitting provision so onerous and prohibitive, that a fee-splitting provision may be unconscionable. In others, both parties may be fully capable of paying their share of the cost of arbitration. Here, for example, Theis is a 40-year veteran of the insurance industry, and it appears he may have adequate resources. Theis alleges he was not paid for a 30-day period following the termination of his

regional sales coordinator position, and he lost $26,550 in income as a result. If that is representative of his monthly income from his regional sales coordinator position alone, requiring that he pay a one-third share of the cost of arbitration may not be unconscionable.

Moreover, assessing the unconscionability of fee-sharing arrangements on a case-by-case basis is consistent with the U.S. Supreme Court's decision in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000). In *Green Tree*, a mobile home financing agreement provided that all disputes under the agreement would be resolved by arbitration, but it did not provide how the fees and costs of arbitration would be allocated. *Green Tree*, 531 U.S. at 82-83, 84. Randolph sought to invalidate the provision, arguing that this silence put her at risk of incurring prohibitive arbitration costs and force her to forgo her claims. *Id.* at 84.

The Supreme Court rejected the argument, finding that invalidating the agreement on that basis "would undermine the liberal federal policy favoring arbitration agreements," and would conflict with the principle "that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Id.* at 91 (internal citations and quotations omitted). The Court said where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

Although *Green Tree* involved a claim under the Truth in Lending Act, not an employment claim, the basis for the Court's decision is applicable here. Theis has presented no evidence to support his contention that sharing the cost of arbitration would be unaffordable, would exceed the cost of litigation, or would otherwise substantially interfere with his ability to seek relief under the agreement. He simply argues in his brief, without evidentiary support, that he could possibly incur "tens of thousands of dollars, without any way to recover" those costs. (Doc. 9 at 9.) This showing is not sufficient to sustain Theis's burden. See e.g., *Green Tree*, 531 U.S. at 90 n. 6 (unsupported statements in brief did not provide basis to ascertain the costs and fees of arbitration).

Finally, it should also be noted that Montana law appears to contemplate fee-sharing arrangements in arbitration contracts. Montana's Uniform Arbitration Act provides:

> *Unless otherwise provided in the agreement to arbitrate*, the arbitrators' expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration, must be paid as provided in the award. (Emphasis added.)

Mont. Code Ann. § 27-5-218. Thus, under Montana law, parties to an arbitration agreement are free to make arrangements for payment of the arbitrator's fees and expenses via the terms of a contract.

Therefore, the Court finds that Theis has not met his burden to demonstrate the Associate's Agreement arbitration provision is unconscionable and thus unenforceable.

### 2.     Breach of Agreement

In addition to his unconscionability argument, Theis also argues that Aflac materially breached the Associate's Agreement and the agreement is therefore unenforceable. (Doc. 9 at 9.) Theis cites to *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005), for the proposition that an arbitration agreement is unenforceable when a party materially breaches an element of the contract. (*Id.* at 10.) Theis misconstrues *Brown*, which, if anything, supports arbitration of Theis's breach of contract claims.

In *Brown*, the Ninth Circuit held the clothing store-defendant (Dillard's) could not compel arbitration after denying a terminated employee's request for arbitration, pursuant to an arbitration agreement. *Brown*, 430 F.3d at 1012. The employee subsequently turned to state district court to resolve her claims, where Dillard's then attempted to compel arbitration. *Id.* at 1009-10. Dillard's argued that it could compel arbitration despite any possible breach of the arbitration agreement, citing to *Local Union No. 721 v. Needham Packing Co.*, 376 U.S. 247 (1964), among other cases. *Id.* at 1010. In *Needham Packing*, the company argued that it was released from arbitration obligations because the union had breached the

no-strike provision of a collective bargaining agreement, which included an arbitration clause. *Id.* at 1011 (citing *Needham Packing Co.*, 376 U.S. at 251-52). The U.S. Supreme Court held that the union had not lost its right to compel arbitration because the "[a]rbitration provisions, *which themselves have not been repudiated*, are meant to survive breaches of contract …" *Id.* (emphasis original) (quoting *Needham Packing*, 376 U.S. at 251-52). As applied in *Brown*, the Ninth Circuit emphasized *Needham Packing's* holding that the alleged breach of contract related to a different contract provision, not the arbitration agreement, whereas Dillard's had breached the arbitration agreement itself, which was "tantamount to a repudiation of the arbitration agreement." *Id.*

Here, Theis alleges Aflac materially breached four provisions of the Associate's Agreement, none of which are related to the arbitration agreement. (*See* Doc. 9 at 11.) Both the U.S. Supreme Court's holding in *Needham Packing* and the Ninth Circuit's holding in *Brown* support the survivability of the arbitration agreement in the face of alleged breaches of contract when those breaches do not involve the arbitration agreement itself.

To hold otherwise would provide an avenue for any party to invalidate an arbitration agreement by simply alleging a material breach of some other provision of the parties' agreement. This would plainly undermine the federal policy favoring arbitration agreements.

16

## B. Whether the Agreement Encompasses Dispute

The second question a court must address in determining arbitrability is whether the claims fall within the scope of the arbitration agreement. *Chiron Corp.*, 207 F.3d at 1130.

Aflac argues that Theis's claims are within the scope of the arbitration agreement contained in Paragraph 10 of the Associate's Agreement. (Doc. 7 at 12.) Theis does not address the issue. (*See generally* Doc. 9.)

The Court finds the arbitration agreement to be broad and expansive enough to include Theis's claims for wrongful termination and age discrimination. Paragraph 10.1 reads, in pertinent part:

> … the parties agree that *any dispute* arising under or related in *any way* to the Agreement ("Dispute"), to the maximum extent allowed under the Federal Arbitration Act ("FAA"), shall be subject to mandatory and binding arbitration, including *any* Dispute arising under federal, *state* or local laws, *statutes* or ordinances (for example, statutes prohibiting anti-competitive conduct, unfair business practices and *discrimination* or harassment *on the basis of* race, sex, religion, color, national origin, *age* or disability) or arising under federal or state common law (for example, *claims of breach of contract*, fraud, negligence, emotional distress or breach of fiduciary duty). (Emphasis added.)

(Doc. 9-1 at 17, ¶ 10.1.) Theis's claims for wrongful discharge and age discrimination, as well as either parties' claim of breach of contract, are encompassed by the arbitration agreement.

/ / /

/ / /

17

### C. Dismissal or Stay of Proceedings

The FAA provides that courts shall stay actions pending arbitration. 9 U.S.C. § 3. Despite the mandatory nature of the language in Section 3, the Ninth Circuit has held that courts have discretion to dismiss an action if all the plaintiff's claims are subject to arbitration. *Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (stating the FAA "gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause").

While the Ninth Circuit has recognized the discretion to dismiss actions, a court is not obligated to do so. Here, consistent with the language of the statute, the more prudent course would be to stay this action pending arbitration. If all claims and issues are ultimately resolved through arbitration, the parties may move to dismiss this action upon completion of the arbitration process.

### D. Attorney's Fees

Aflac requests attorney's fees as provided by the Associate's Agreement because it alleges Theis breached the agreement by filing this matter in state district court. (Doc. 7 at 15.) Aflac points to a provision in the Associate's Agreement that "expressly provides that Plaintiff 'shall indemnify Aflac in full for any claims, costs, liability or harm, including reasonable attorneys' fees, suffered

by Aflac as a direct or indirect result of [Plaintiff's] breach of this agreement. (*Id.*, citing Doc. 7-1 at 8, ¶1.3.)

Theis responds that he did not breach the agreement, but instead Aflac committed multiple breaches and therefore he is entitled to attorney's fees. (Doc. 9 at 14.)

As discussed above, this Court's role is limited to determining (1) whether a valid agreement to arbitrate exists, and (2) whether the agreement encompasses the dispute at issue.  If so, the Court is required to enforce the arbitration agreement in accordance with its terms. *Chiron Corp.*, 207 F.3d at 1130.  "[C]ourts must be careful not to overreach and decide the merits of an arbitrable claim.  Our role is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991).  Accordingly, the determination of whether either party breached the agreement, and what remedies, including attorney fees, may be available for any such breach, is for the arbiter to decide.

**IV.   Conclusion**

Based on the foregoing, IT IS RECOMMENDED as follows:

1. Aflac's Motion to Compel Arbitration (Doc. 6) should be GRANTED;

2. Aflac's motion for attorney's fees should be DENIED;

3. Aflac's request to dismiss the case should be DENIED;

4. This action should be STAYED pending arbitration.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 28th day of December, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge